ESTATE OF WINIFRED H. KINNEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49582.   Promulgated May 1, 1934.

*R. C. Gortner*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

LANSDON: The respondent has determined a deficiency in estate tax in the amount of $3,968.07. Two questions are involved, viz., (1) Whether the decedent at date of death had a vested interest in one-ninth of the corpus of a certain trust, and (2) the value of such interest at that date. The parties have filed a stipulation which the Board accepts. The material facts so agreed to may be summarized as follows:

Winifred H. Kinney, the decedent, died testate on December 6, 1927. This appeal is prosecuted by Sherwood Kinney and R. C. Gortner, as executors, both living in Los Angeles, California.

On October 28, 1918, Abbot Kinney, husband of the decedent, executed a trust indenture which included the following:

That Abbot Kinney of Los Angeles County, California, herein designated the trustee, does hereby covenant and declare that he has and holds the title to the following described property in trust for the uses and purposes hereinafter expressed, to-wit:

All shares of stock owned by and all shares outstanding in the name of Abbot Kinney on the books of the company in the Abbot Kinney Company, a corporation, organized under the laws of California, and which said title and ownership of shares includes all shares heretofore issued by said company, except three (3) shares.

That said trustee shall have the power to sell, transfer, convey and mortgage all or any of said property, and to receive the rents and profits from said property, and as incidental thereto to manage said property and vote all shares of stock, and to pay and apply said rents and profits for the support and maintenance of the following named persons, in the proportions hereinafter stated, to-wit:

To Thornton Kinney one-sixth ($\frac{1}{6}$); to Sherwood Kinney one-sixth ($\frac{1}{6}$); to Innes Kinney one-sixth ($\frac{1}{6}$); to Carleton Kinney one-sixth ($\frac{1}{6}$); to Winifred H. Kinney for the support and maintenance of herself, and for the support and maintenance of the two minor children of Abbott Kinney, to-wit: Helen Kinney and Clan Kinney, to be controlled and applied by said Wilfred H. Kinney, one-third ($\frac{1}{3}$); provided, however, that during the life of Abbot Kinney, trustee above named, he shall act as the sole trustee under this declaration of trust, and he being the sole trustor and maker of this trust shall have the power to revoke this trust at any time during his lifetime, and during his life time he reserves and shall have the right to receive and to apply one-half of all the rents, income and profits from the property above described for his sole use as he may determine. In case of the death, absence or inability to act, of said Abbot Kinney, trustee, such vacancy shall be filled by a board of directors composed of the following named persons, by proper transfers and declarations of trust; Thornton Kinney; Winifred H. Kinney; Sherwood Kinney, Innes Kinney and Carleton Kinney, and in case of death, absence or inability to act of either or any of said five, then such vacancy shall be filled by Clan Kinney and Helen Kinney, in the order named, and all such trustees, in turn, shall have and be possessed of all the power under this trust hereinbefore mentioned.

\* \* \* \* \* \* \*

Upon the termination of this trust, unless revoked, the title to the whole of said property, so held in trust, shall immediately vest in the above named beneficiaries by title absolute, in the same proportions above named for rents and profits and the said one-third ($\frac{1}{3}$) above set forth for the support of Winifred H. Kinney, Helen Kinney and Clan Kinney, will pass to them in equal shares by absolute title.

\* \* \* \* \* \* \*

Winifred H. Kinney, wife of said Abbot Kinney, hereby joins in this instrument, and hereby declares that all of said property transferred in trust as aforesaid is the separate property and estate of said Abbot Kinney, subject to his disposition and control, and hereby renounces all claims to said property as community property or otherwise, and sets the same apart as the sole property and estate of said Abbot Kinney.

Abbot Kinney died in November 1920. The decedent bequeathed her interest in the trust to her two children, Clan Kinney and Helen

Kinney Gerety. The other beneficiaries of the trust were children of the trustor by a previous marriage.

The net worth of the Abbot Kinney Co. on December 6, 1927, as reflected by the book values of its assets, was $1,814,103.93, and on June 30, 1920, was $1,438,016.60. On July 1, 1930, Innes Kinney sold a one-sixth beneficial interest in the trust to Carleton Kinney for $133,000. On August 5, 1930, Thornton Kinney sold a one-sixth beneficial interest in the trust to Sherwood Kinney for $133,000.

It is stipulated that if called as witnesses, C. C. Hogan, trust officer, Security First National Bank of Los Angeles, would testify that in his opinion Mrs. Kinney could not have sold her interest in the trust for more than 50 percent of the pro rata value of the capital stock of the corporation in 1927; that W. D. Newcomb, Jr., president of the First National Bank of Venice, California, would testify that the fair market value of Mrs. Kinney's interest in the trust in 1927 was not in excess of 25 percent of the fractional worth of the corporation; and that Herbert Hertel, manager of the Venice Branch of the Security First National Bank of Los Angeles, would testify that in his opinion Mrs. Kinney's beneficial interest was worth 33⅓ percent of the fractional net worth of the corporation's assets in 1927.

On the question whether or not the decedent at the time of her death owned a vested interest in the corpus of the trust, we must sustain the contentions of the respondent.

Construing the trust instrument from its four corners, it is clear that it created an executed trust which gave to the beneficiaries not only the income from the trust estate during its life, but a vested interest as remaindermen in the corpus, which became absolute at its termination. *In Re Fair's Estate*, 122 Cal. 523; 60 Pac. 442; *Nobel* v. *Leonard*, 153 Cal. 245; 94 Pac. 1047; *Nichol* v. *Emery*, 109 Cal. 323; 41 Pac. 1089.

The petitioner argues that because the language of the trust instrument provides that upon termination of the trust the title to the whole of the property " shall immediately vest " in the beneficiaries by title absolute, no title could vest in the beneficiaries until such time. It is obvious that in taking this position the petitioner has confused the decedent's title to a vested remainder in the corpus of the trust with that of title absolute in the whole property after exhaustion of the trust. The remaindermen and the " particular estate " (trust estate here) are separate species of property, complement, however, to each other and created at the same time and by the same instrument. The title to both passed out of the owner at the time he created the trust; one going to the trustees, and the other to the remaindermen, they being *in esse* at the time. 23 R.C.D. 492; *Doe* v. *Considine*, 6 Wall. 458; *Anderson* v. *Messinger*, 146 Fed. 929; *Bunting* v. *Speck*, 21 Pac. 288.

The corpus of the trust here considered consisted of the capital stock of the Abbot Kinney Co., and in determining the value of the decedent's interest in it at the time of her death respondent took as his base the agreed net worth of that company's assets on that date and divided it by nine. The petitioner contends that in no event could the value of that interest have been equal to a one-ninth part of such net worth, because of the fact that possession and control were in the trustees, and seeks to establish the fair market value of such interest at the date of decedent's death by showing sales made by two cobeneficiaries of their respective interests in the trust on or about June 30, 1930.

The alleged sales of interests, so referred to, being more than two years and six months after decedent's death (December 6, 1927), are too remote in point of time to serve as a guide in determining values on the basic date. A review of the sale agreements also shows that they were not cash sales, but mere contracts in which credits and washing out of accumulated advances formed the major part of the considerations involved. They, therefore, furnish us no useful guide in this inquiry and will be disregarded.

The parties have agreed what certain bank officials, if present, would testify respecting their individual opinion of decedent's interest, expressed in percentages of and comparisons to the corporation's assets. One opinion, so put into the record, suggests that decedent's interest could not have been sold for more than 50 percent of the pro rata of one ninth of the corporation's capital stock in 1927. Another is that the value of that interest was not in excess of 25 percent of the corporation's net worth; and the other that the interest was worth $33\frac{1}{3}$ percent of the net worth of the corporation's interest in 1927.

It is obvious that these vague opinions in no sense constitute proof, and, even as arguments, they assign no reasons for the positions assumed. The first two are negative in character and attempt to say what price the decedent's interest could not have been sold for on the basic date, and the other what that interest's relative value was compared to the corporation's net assets. These opinions, like the alleged sales hereinbefore mentioned, are not evidence, and we merely refer to them in this opinion to indicate the extent to which the petitioner has failed in giving us any proof to show that the respondent erred in his determination of the value of a one ninth interest in the trust in the amount of $201,567.10. *Warren M. Horner*, 5 B.T.A. 974; *Wm. A. Pringle et al., Executors*, 6 B.T.A. 299; *English & Scottish Law Life Assurance Assn.*, 10 B.T.A. 454; *G. S. Patterson*, 17 B.T.A. 716.

*Decision will be entered for the respondent.*