### KINNEY'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.
No. 7639.

Circuit Court of Appeals, Ninth Circuit.
Dec. 16, 1935.

R. C. Gortner, of Beverly Hills, Cal., for petitioner Sherwood Kinney.

Harold J. Cashin, of Los Angeles, Cal., for petitioner Helen Gerety, etc.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Ellis N. Slack, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

During his lifetime one Abbot Kinney, a resident of the state of Californa, created a trust in certain property owned by him, whereby he was to be the trustee and whereby each of four children by a previous marriage was to receive one-sixth of the profits and rents of the trust estate, and his wife, for her support and maintenance and the support and maintenance of their two children, one-third. The trust was to continue during his lifetime, subject to revocation by him, and, following his death, was to continue to operate for twelve years, when the trust estate was to be distributed.

Abbot Kinney died in November, 1920. His wife, Winifred Kinney, then domiciled in California, died December 6, 1927, while the trust had yet five years to run. She left a will and codicil, whereby she bequeathed her beneficial interest in the trust to her two children.

It was claimed that in filing the estate tax return the executor of the estate of Winifred Kinney neglected to include in the gross estate the value of the decedent's interest in the Abbot Kinney trust. The Commissioner held that the value of such interest was a part of the decedent's gross estate; determined the value to be one-ninth (one-third of one-third) of the fair market value of the assets of the Abbot Kinney trust as of December 6, 1927, or $201,567.10, and determined a deficiency in the amount of $3,968.07. The Commissioner's determination was affirmed by the Board of Tax Appeals. 30 B.T.A. 604. The case is before us upon petition of the taxpayer to review the order of the Board of Tax Appeals.

There are two questions involved in this petition to review: (1) Whether the decedent, at the time of her death, had any taxable vested interest in the corpus of the trust estate; and, if it be determined that the interest of the deceased was vested (2) whether the value fixed by the Commissioner was supported by any evidence.

Petitioner contends that the trust instrument did not create a vested interest in the corpus of the trust estate in Winifred Kinney, the deceased. It is plain that if the interest of Winifred Kinney was vested, it should be included in her gross estate; if contingent, not. Commissioner of Internal Revenue v. Rosser (C.C.A.) 64 F.(2d) 631. The interest of the decedent is to be determined by the laws of the state in which the decedent was domiciled at the time of death. Pennsylvania Co. for Insurance on Lives, etc., v. Lederer, Collector, 292 F. 629 (D.C.Pa.); Wardell, Collector, v. Blum et al., 276 F. 226 (C.C.A.9); Hibbard v. Crooks, Collector, 25 F.(2d) 896 (D.C.Mo.).

The important provisions of the trust indenture are as follows:

"(4) That said trustee shall have the power * * * to pay and apply said rents and profits for the support and maintenance of the following named persons in the proportions hereinafter stated, to-wit:

"(5) * * * provided, however that during the life of Abbot Kinney, trustee above named, he shall act as the sole trustee under the declaration of trust, and he being the sole trustor and maker of this trust shall have the power to revoke this trust at any time during his life time, and during his life time he reserves and shall have the right to receive and to apply one-half of all the rents, income and profits from the property above described for his sole use as he may determine. * * *

"(6) * * * This trust shall endure for the period of twelve (12) years after the death of said Abbot Kinney, provided that in case of the death of all of the natural persons in being named in this instrument prior to said time, then this trust shall terminate upon said deaths, but shall be effective from the date hereof.

"(7) Upon the termination of this trust, unless revoked, the title to the whole of said property, so held in trust, shall immediately vest in the above named beneficiaries by title absolute in the same proportions above named for rents and profits and the said one-third (1/3) above set forth for the support of Winifred H. Kinney, Helen Kinney and Clan Kinney, will pass to them in equal shares by absolute title."

The California Civil Code, § 693, provides that: "A future interest is either: 1. Vested; or, 2. Contingent." The next section (694) of the Civil Code says: "A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest." And the following section (695) deals with contingent interests, and reads as follows: "A future interest is contingent, whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain."

"Remainders are either vested or contingent. A remainder is vested if, at every moment during its continuance, it is ready to come into possession, whenever and however the preceding estates determine, a remainder is contingent if, in order for it to come into possession, the fulfillment of some condition precedent, other than the determination of the preceding estates, is necessary. If an estate is given to A. for life, remainder to his eldest born son in fee, the remainder is contingent until the birth of A.'s first-born son, and then vests." Gray's "The Rule Against Perpetuities," (2d Ed.) § 9, p. 5.

"The broad distinction between vested and contingent remainders is this: In the first, there is some person in esse, known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate upon the expiration of the existing particular estate, and whose right to such remainder no contingency can defeat. In the second, it depends upon the happening of a contingent event whether the estate limited as a remainder shall ever take effect at all. It may never happen, or it may not happen until after the particular estate upon which it depends shall have been terminated, so that the estate in remainder will never take effect." Estate of Washburn, 11 Cal.App. 735, 740, 106 P. 415, 417.

"The policy of the law is favorable to the vesting of estates, and so remainders are held to be vested rather than contingent." 10 R.C.L. § 3, p. 648. In Williams v. Williams, 73 Cal. 99, 14 P. 394, 396, the Supreme Court of the state of California said: "The law favors the vesting of interests, and every interest will be presumed to be vested unless a contrary intention is clearly manifest."

In re De Vries, 17 Cal.App. 184, 188, 119 P. 109, 111, has this to say: "It is, of course, to be conceded that great difficulty often arises in determining whether a vested or contingent remainder was intended by the language of an instrument whose manifest purpose is to carve out of the same estate two or more separate and distinct interests—the one the right to the possession of which is to be enjoyed in præsenti and the others in futuro. Indeed, it is manifestly a much more simple task to formulate, as the law writers and the Legislature have done, a general distinction between vested and contingent future interests than to apply, in many instances, a distinction to concrete cases. The general definitions of vested and contingent remainders, as given by the law writers and our Code, are sufficiently clear and explicit, yet, after all, the real point of decision in all cases where the question is whether a future interest created by devise or otherwise is vested or contingent is as to the intention of the testator or grantor in that regard, and such intention, as before stated and as is obviously true, must, in cases where construction is necessary, be gath-

ered from the language of the instrument viewed by the light of established and accepted canons of construction."

In Doe, Lessee of Poor, v. Considine, 6 Wall. (73 U.S.) 458, at page 476, 18 L.Ed. 869, the Supreme Court of the United States said:

"The law does not favor the abeyance of estates, and never allows it to arise by construction or implication.

" 'When a remainder is limited to a person *in esse and ascertained,* to take effect by *express limitation,* on the termination of the preceding particular estate, *the remainder is unquestionably vested.'*

"This rule is thus stated with more fullness by the Supreme Court of Massachusetts. 'Where a remainder is limited to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event *that must unavoidably happen by the efflux of time,* the remainder vests in interest as soon as the remainder-man is in esse and ascertained, provided nothing but his own death before the determination of the particular estate, will prevent such remainder from vesting in possession; yet, if the estate is limited over to another in the event of the death of the remainder-man before the determination of the particular estate, his vested estate will be subject to be devested by that event, and the interest of the substituted remainder-man which was before either an executory devise or a contingent remainder, will, if he is in esse and ascertained, be immediately converted into a vested remainder.' [Blanchard v. Blanchard, 1 Allen, 223, 227].

"In 4th Kent's Commentaries, 282, it is said: 'This has now become the settled technical construction of the language and the established English rule of construction.' It is added: 'It is the uncertainty of the right of enjoyment, and not the uncertainty of *its actual enjoyment,* which renders a remainder *contingent.* The present capacity of taking effect in possession—if the possession were to become vacant—distinguishes a vested from a contingent remainder, and not the certainty that the possession will ever become vacant while the remainder continues.' "

Petitioner urges that the trust instrument is barren of words of present gift. The grantor or trustor created the trust estate and named himself trustee. Since he had possession of and title to the property, it was not necessary for him to give any title to himself. He merely created the trust. There were definite persons who were to share in the proceeds of the estate in definite fractions.

"It is possible * * * for one who owns property, to so deal with it, while retaining the legal title, as to make himself a trustee for the benefit of another. * * * 'It is not necessary that this be done in express terms, but in the absence of statutory requirements any words or acts are sufficient which clearly denote the intention to relinquish his beneficial interest in the property in præsenti, and and to hold it for the benefit of another.' * * * The reservation of a partial or total power of revocation is not inconsistent with the establishment of a trust. * * * Nor is it an objection that the beneficiary's right of enjoyment is postponed, provided that an immediate interest, subject to such postponement, is given." Noble v. Learned, 153 Cal. 245, 251, 94 P. 1047, 1050. "Nor did the fact that the settlor reserved the power to revoke the trust operate to destroy it, or change its character. He had the right to make the reservation. * * * But the trust remained operative and absolute until the right was exercised in proper mode. * * * Indeed, this power of revocation was strongly favored in the case of voluntary settlements at common law, and such a trust, without such a reservation, was open to suspicion of undue advantage taken of the settler. * * * And the fact that he reserved the right to revoke did not impair the trust, nor affect its character, since title and interest vested subject to divestiture only by revocation, and, if no revocation was made, they became absolute." Nichols v. Emery, 109 Cal. 323, 331, 41 P. 1089, 1091, 50 Am.St. Rep. 43.

Petitioner points out that the trust instrument provides that: "Upon termination of this trust * * * the title to the whole of said property, so held in trust, shall immediately vest in the above named beneficiaries by title absolute, * * *" etc. The trust was to terminate, as noted above, twelve years after the death of Abbot Kinney, or, if all beneficiaries should die before the lapse of the twelve-year period, then the trust would terminate upon the death of the last surviving beneficiary. It is contended that the trustor intended the trust property to vest in the beneficiaries

at the termination of the trust, and not before. "But it is important to note the distinction between the interest transferred and the enjoyment of that interest. The enjoyment of the cestui may be made to commence in the future, and to depend for its commencement upon the termination of an existing life or lives, or an intermediate estate." Nichols v. Emery, supra, 109 Cal. 323, at page 330, 41 P. 1089, 1091, 50 Am. St.Rep. 43.

Having in mind these rules and the California Code provisions, we are brought, after study of the declaration of trust, to the conclusion that the legal title to the remainder vested at once in the beneficiaries, and that possession was to vest in them at the termination of the trust.

■ There were persons in being who could take, under the terms of the instrument, upon the ceasing of the precedent interest, which brings the matter in controversy under the Code provision defining vested estates. Moreover, there was no contingency directly (or indirectly) expressed, which could defeat the vesting of the interests; thus, we are within the quotation from the Williams Case, supra. We are of opinion that the interest of Winifred Kinney in the corpus of the trust estate was so vested as to permit her to pass said interest by will, and was, therefore, taxable as a part of her gross estate.

The only remaining question is whether or not the Commissioner erred in determining the value of the estate to be assessed. It is contended that the valuation fixed by the Commissioner was excessive.

The Abbot Kinney trust was the owner of all of the outstanding stock of the Abbot Kinney Company, save 3 shares. The net worth of the Abbot Kinney Company on December 6, 1927, was $1,814,103.93. One-ninth of this sum is $201,567.10, upon which the Commissioner assessed the tax in the amount of $3,968.07. The executors contended the value was, at most, not over 50 per cent. of the free pro rata value of one-ninth of the company's assets. In July, 1930, Innes Kinney sold a one-sixth beneficial interest in the trust to Carleton Kinney for the sum of $133,000. For a like sum Thornton Kinney sold, on August 5, 1930, his one-sixth beneficial interest in the trust to Sherwood Kinney. It was stipulated that certain witnesses would testify to the value of Winifred Kinney's interest, and that each would testify that the value

of the interest in question was from 50 to 25 per cent. below the pro rata value of the capital stock of the corporation in 1927.

■ As pointed out by respondent, the determination of the Commissioner is prima facie correct, and the burden is upon the taxpayer to prove his determination to be erroneous. "It is likewise true that this value was an issue of fact and the finding of the Board of Tax Appeals must be sustained if based upon any substantial evidence. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289. And this court has held that we are bound by the decision of the Board, where the evidence does not compel a contrary conclusion. Pedder v. Commissioner (C.C.A.) 60 F. (2d) 866." Old Mission Portland Cement Co. v. Commissioner, 69 F.(2d) 676, 679 (C.C.A.9).

■ The sales referred to were made nearly three years after the decease of Winifred Kinney, between members of the same family, and so they were of no value in determining the value of her interest in December of 1927, especially in view of the intervening business depression.

■ On the face of it, the Commissioner was justified in ignoring the opinion evidence, where the witnesses were expressing an opinion as to the *then* value of the estate and the opinion is given several years after the time in question, and no facts are given upon which the witnesses base their respective opinions. "Such evidence, while competent and often exceedingly helpful, is not considered binding, in the sense that a tribunal before whom it is adduced is required to accept it, where same is contrary to the tribunal's own judgment of *the result of the facts upon which the opinion evidence is based.*" Am-plus Storage Battery Co. v. Commissioner (C.C.A.7) 35 F. (2d) 167, 169. (Italics ours.) As was said in Avery v. Commissioner, 22 F.(2d) 6, 8, 55 A.L.R. 1277 (C.C.A.5), "We are not at liberty to substitute our opinion for that of the board on the facts shown on the record, even if we were disposed to do so."

In the recent case of Keck Investment Co. v. Commissioner, 77 F.(2d) 244, 245, we said, "The Commissioner was not bound to accept the retroactive testimony of these witnesses. * * * The Board is only required to give such weight to the testimony as it seems to merit. The most that

courts can do is to correct obvious abuses. We cannot say that the court was wrong in fixing the values."

The decision of the Board of Tax Appeals is affirmed.