**ZANUCK v. COMMISSIONER OF INTERNAL REVENUE (two cases).**

Nos. 10732, 10731.

Circuit Court of Appeals, Ninth Circuit.

May 28, 1945.

Mabel Walker Willebrandt, of Los Angeles, Cal., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, L. W. Post, and Maryhelen Wigle, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, STEPHENS, and BONE, Circuit Judges.

BONE, Circuit Judge.

Taxpayers, husband and wife, seek review of an adverse decision of the Tax Court sustaining a determination of the Commissioner of Internal Revenue. On October 5, 1939, they made a gift of 30,000 shares of the common stock of Twentieth Century-Fox Film Corporation to three children, this stock being transferred to certain trusts created for each child. At the time, the husband was an important officer of Fox Film which is one of the largest of the motion picture companies. World War II was just beginning and the movie industry was confronted with labor troubles. These two factors, along with

others touching the financial condition of the corporation, are asserted by taxpayers as having a decisive bearing on the actual, intrinsic worth of the stock on the date of the gift. The Commissioner refused to accept the value of $11 per share reported by taxpayers in their gift tax return and determined the true value of the stock to be $14.25 per share at the time of the transfer, which figure was also the mean between the highest and lowest quoted selling prices of the stock on the New York Stock Exchange on the date of the transfers. The Tax Court sustained the Commissioner's determination.

Taxpayers object to the use of market price as a criterion of value, asserting that in this case certain "unusual circumstances", i. e., the war, made very uncertain the value of large foreign holdings of Fox Film; also that the war and current labor troubles affected the intrinsic worth of the stock and that all of these factors unite to establish the "actual, intrinsic value." Separate cases of taxpayers were consolidated for hearing and opinion in the Tax Court and likewise consolidated for review here. They are to be decided as one case.

The applicable statute (Section 506, Revenue Act of 1932, Section 1005, I.R.C., 26 U.S.C.A.Int.Rev.Code, § 1005) uses but does not define the word *value* or prescribe how it shall be determined.[1] Congress did not enact a statutory definition and Treasury Regulations were devised to meet the necessities of practical application of the statute. Cf. Brooks v. Willcutts, 8 Cir., 78 F.2d 270. The regulations have long provided for the use of market prices in determining value (Art. 19(3), Treasury Regulations 79 (1933 and 1936 eds.); Section 86.19 (c), Treasury Regulations 108) and during such period there has been no relevant change in the above cited law. For regulations involved see footnote[2].

---

[1] Revenue Act of 1932, c. 209, 47 Stat. 169:

"Sec. 506. Gifts made in property.

"If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift."

[2] "Treasury Regulations 79 (1936 Ed.):

"ART. 17. Gifts made in property.— A gift made in property is subject to the tax in the same manner as a gift of cash, and the amount of the gift is the

value of the property at the date of the gift.

"ART. 19 [as amended by T.D. 4901, 1939-1 Cum.Bull. (Part 1) 341]. Valuation of property.—(1) General.—The statute provides that if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift. The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, nei-

The stock was listed on the New York Stock Exchange and was the subject of active trading over the years, including all of the period relevant to this inquiry. In their brief, taxpayers do not repudiate market price as a yardstick nor do they insist that the Commissioner is wrong in emphasizing market price. They frankly concede that "often market is as good a measuring stick for value as may be found" and that "in many cases it will be the easiest obtainable and best criterion of value." Their main contention is that the "unusual circumstances" mentioned were not considered and weighed by the Commissioner; that they took market into consideration in re-

---

ther being under any compulsion to buy or to sell. The value of a particular kind of property is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value at the time of the gift of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the time of the gift should be considered.

\* \* \* \* \* \* \*

"(3) Stocks and bonds.—The value at the date of the gift in the case of stocks and bonds, within the meaning of the statute, is the fair market value per share or bond on such date.

"In the case of stocks and bonds listed on a stock exchange the mean between the highest and lowest quoted selling prices on the date of the gift shall be considered as the fair market value per share or bond. If there were no sales on the date of the gift, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of the gift (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of the gift, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of the gift. For example, assume that sales of stock nearest the date of the gift (June 15) occurred two days before (June 13) and three days after (June 18) and that on such days the mean sale prices per share were $10 and $15, respectively. The price of $12 shall be taken as representing the fair market value of a share of such stock as of the date of the gift. If, however, on June 13 and June 18 the mean sale prices per share were $15 and $10, respectively, the price of $13 shall be taken as representing the fair market value of a share of such stock as of the date of the gift. If the security was listed on more than one exchange, the records of the exchange where the security is principally dealt in should be employed. In valuing listed stocks and bonds the donor should observe care to consult accurate records to obtain values as of the date of the gift.

"In the case of stocks and bonds which are not listed upon an exchange, but are dealt in through brokers, or have a market, the fair market value shall be determined by taking the mean between the highest and lowest selling prices as of the date of the gift; or, if there were no sales on that date such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of the gift (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of the gift, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of the gift. If quotations are obtained from brokers, or evidence as to the sale of securities is obtained from the officers of the issuing companies, the donor should preserve in his files the letters furnishing such quotations or evidence of sale for inspection when the return is verified by an investigating officer.

"If actual sales are not available during a reasonable period beginning before and ending after the date of the gift, the fair market value may be determined by taking the mean between the bona fide bid and asked prices on the nearest date before and the nearest date after the date of the gift (both such nearest dates being within a reasonable period, and by prorating the difference between such mean prices to the date of the gift, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of the gift.

"If actual sale prices or quoted bona fide bid and asked prices are available on a date within a reasonable period prior to the date of the gift, and if no actual sale prices or bona fide bid and asked prices are available on a date within a reasonable period after the date of the gift, or vice versa, then the mean

turning the value of the stock gift but also weighed the other information referred to "which the public knew but did not know how to weigh." They admit that market price is one of the many elements to consider in appraising property but also insist that *value* does not mean market price, and by using that term, Congress meant *intrinsic worth* of a thing. The criterion of value authorized by Treasury Regulations and here applied by the Commissioner and sustained by the Tax Court is assailed as doing violence to and limiting the "intent" of Congress as expressed in the statute (Section 506, Revenue Act of 1932, supra). In the Tax Court, no reliance was placed on the blockage theory or that sales of this stock had been pegged or distorted by market manipulation on the day of the gift. In this court, taxpayers specifically disclaim any reliance on the blockage theory. They rely solely on the argument that the statute taxes only value, and that for the Commissioner to refuse, because of the regulations, to receive taxpayers' return based on a value arrived at by considering the "unusual factors of War and Strike", as well as market, is "an arbitrary and unreasonable restriction of the Statute," resulting in an excessive and illegal addition to the gift tax.

Taxpayers stress the holdings in Guggenheim v. Rasquin, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813, and the companion cases of Powers v. Commissioner of Internal Revenue, 312 U.S. 259, 61 S.Ct. 509, 85 L. Ed. 817 and United States v. Ryerson, 312 U.S. 260, 61 S.Ct. 479, 85 L.Ed. 819, as supporting their position that what criterion should be employed for determining value of gifts, is a question of law, and therefore subject to review here. These three cases laid down a rule for the proper evaluation of paid-up policies of life insurance for gift tax purposes, in the absence of any sort of interpretative regulation that by its terms could be regarded as covering this sort of "property". See footnote bottom of page 257 of 312 U.S., 61 S.Ct. 508, 85 L.Ed. 813, Rasquin case. Apparently, the only regulation that had been there suggested as applicable, dealt in general terms with "the value of property." It is obvious that such a regulation was, in itself, of more than questionable value as a "yardstick" wherewith to measure value of this type of "property." In the leading (Rasquin) case, the Supreme Court stresses the *nature* of the gift in these particular cases as the necessarily determining valuation factor.

These cases seem clearly distinguishable from those in which there are solid bench marks of value on which sound and commonly accepted concepts of value can be and are generally based in every day business practice. They illustrate a situation characterized and complicated by an absence of an "interpretative regulation" to aid in the process of valuation. The court held that in dealing with this particular type of "property," not then dealt with in the regulations, cost, rather than cash-surrender value, was the proper yardstick of value for gift tax purposes, stating that "cost * * * is the only suggested criterion which reflects the value * * *. Cost *in this situation* is not market price in the normal sense of the term. But the absence of market price is no barrier to valuation. * * * Accordingly, the problem here involves an interpretation of 'value' in § 506 *unaided by an interpretative regulation."* 312 U.S. p. 258, 61 S.Ct. 509, 85 L.Ed. 813, Rasquin case, supra. [Emphasis added.]

We are unable to conclude that the criterion of value adopted in these three cases was specifically intended to overturn and sweep away the well established rule applicable in valuation proceedings affecting stock which is the subject of daily and ex-

---

between such highest and lowest available sale prices or bid and asked prices may be taken as the value.

"If actual sales or bona fide bid and asked prices are not available, then, in the case of corporate or other bonds, the value is to be arrived at by giving consideration to the soundness of the security, the interest yield, the date of maturity, and other relevant factors, and, in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. Complete financial and other data upon which the donor bases his valuation should be submitted with the return.

"In cases in which it is established that the value per bond or share of any security determined on the basis of selling or bid and asked prices as herein provided does not reflect the fair market value thereof, then some reasonable modification of such basis or other relevant facts and elements of value shall be considered in determining fair market value."

tensive dealings on the New York Stock Exchange. The language of the decisions does not support the view, if that is the view of taxpayers, that an applicable regulation may not be an appropriate and highly influential guide in a situation such as the one presented in the instant case. We agree, however, that the subject of yardsticks for the evaluation of stock does present a question of law reviewable by this court.

Commissioner here contends that (1) the question of value of the stock is one of *fact* and that the findings of the Tax Court thereon must be sustained if supported by substantial evidence; (2) that the Commissioner's determination is prima facie correct and taxpayers have the burden of overcoming the presumption; (Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 and cases cited; Emerald Oil Co. v. Commissioner of Internal Revenue, 10 Cir., 72 F.2d 681, 684; Buck v. Helvering, 9 Cir., 73 F.2d 760, 763; Kinney's Estate v. Commissioner of Internal Revenue, 9 Cir., 80 F.2d 568, 572; Gamble v. Commissioner of Internal Revenue, 6 Cir., 101 F.2d 565, 567, certiorari denied, 306 U.S. 664, 59 S.Ct. 790, 83 L.Ed. 1061; Helvering v. Bruun, 309 U.S. 461, 468, 60 S.Ct. 631, 84 L.Ed. 864; Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991) (3) that there is no adequate basis for any contention that the regulations are invalid since they are in no sense arbitrary or unreasonable, but on the contrary, consistent with the statute.

■ This court has held that the question of the value of stock is peculiarly one of fact and the findings of the Tax Court thereon will not be overturned if they are supported by substantial evidence. Roth v. Wardell, 9 Cir., 77 F.2d 124, 125. As bearing on this general principle, see Helvering v. Safe Deposit & Trust Co. of Baltimore, 4 Cir., 95 F.2d 806; Kinney's Estate v. Commissioner of Internal Revenue, supra; Old Mission Cement Co. v. Commissioner of Internal Revenue, 9 Cir., 69 F.2d 676; Gamble v. Commissioner of Internal Revenue, supra; Frischkorn Development Co. v. Commissioner of Internal Revenue, 6 Cir., 88 F.2d 1009.

■ We do not believe that, as a matter of law, an improper criterion of value was here adopted by the Tax Court and we so hold. Under the facts and measured off against all the evidence in this case, we cannot say that the decision was "not in accordance with law." The rulings of the Tax Court on questions of law, while not as conclusive as its findings of fact, are nevertheless persuasive, and it is desirable for a reviewing court to have the benefit of such rulings. This doctrine finds lodgment in such cases as Hormel v. Helvering, 312 U.S. 552 (see note page 556), 61 S.Ct. 719, 85 L.Ed. 1037. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 502, 64 S.Ct. 239, 88 L.Ed. 248 declares the judicial function (of review) is exhausted when there is found to be a "rational basis" for the conclusion of the administrative body.

The record indicates that the Tax Court received and considered all of the available evidence presented by both parties.[3] Documents introduced by taxpayers appear to have fully covered the financial condition and operations of Fox Film over the entire period deemed important to the inquiry, and provided the material facts on which taxpayers relied to sustain their contentions regarding the actual, intrinsic value of the gift stock. The various exhibits of the parties covered the price range of this stock on the New York Stock Exchange over all periods considered relevant by the taxpayers and those periods prescribed by Treasury Regulations. The disclosure in these respects seems complete, and fully covered the contention of the parties.

■ A brief reference to the record in the Tax Court is in order. The documentary evidence reveals that the market price of Fox Film common stock was rising during the greater part of 1938 and declining during the greater part of 1939. However, at no time in 1939 did it reach a low of $11 per share. It was not until March 30, 1940, or about six months after the basic date, that it reached a low of $11⅛ per share. The Tax Court states in its opinion that the adverse factors (beginning of World War II and labor troubles among movie producers) appear to have been reflected in lower prices for the common stock prevailing at the basic date. Between the basic date and the end of October (1939) the common stock reached a high of $15¾ a share and it was not until December 19, or two and one-half months

---

[3] The Com. introduced one witness, an expert in the securities field. Taxpayers' facts were presented and submitted on documentary evidence.

after the basic date that the stock declined below the previous 1939 low of $12 a share reached on September 11. On October 5, 1939 (basic date) the high was $14½ and the low was $14 per share; the market closing at $14¼.

■ The record discloses that all of the evidence offered by both parties was admitted and fully weighed and considered by the court and this evidence covered all of the factors of value urged by either of them. On the basis of this enlightening record it concluded that the value of the stock on the basic date was $14.25 per share. What weight it gave to market value on the stock exchange, and what weight it gave to the other competent evidence submitted by taxpayers dealing with another and somewhat different concept and definition of value, is not for us to determine. The language of the opinion makes clear that the court after considering and weighing all of this evidence dealing with the question of value, reached its decision on that question. In its opinion, it said: "Taken as a whole, the evidence does not establish such exceptional circumstances as to warrant the conclusion contended for by the petitioners * * * the question here is the value of the stock on the basic date and from the evidence before us we think that the value determined by the respondent was sound." We cannot say that the Tax Court, after thus discharging its legal duty of weighing all the evidence admitted on trial, did not apply a sound standard or criterion in determining the value of the stock on the date of the gift within the meaning of the statute. From the record and the opinion of the Tax Court we may logically conclude that since it admitted the tendered evidence and heard argument from taxpayers on the question of "actual, intrinsic value," all of which clearly defined their position, it decided that market value also reflected the "actual, intrinsic value" of the stock on the basic date. Weighing all such evidence, determining its probative value and drawing inferences therefrom is peculiarly and exclusively the function of the Tax Court. The argument that the court erred in refusing to agree with taxpayers that under the facts revealed, "the taxpayer is the one to disclose the value and compute it," is answered by the decision of the court on the facts submitted.

■ We cannot conclude that the Commissioner was in error or acted arbitrarily in applying Treasury Regulations and using market value as one of the important yardsticks in the measure of value.[4] As pointed out in Estate of Leonard B. McKitterick, 42 B.T.A. 130; Petition for Review dismissed June 27, 1941, in the absence of exceptional circumstances which deprive them of or reduce their evidentiary worth, prices at which stock is actually traded on an open public market on the basic date have been held generally to be the most dependable evidence of their value on that date.

We find no error.

Affirmed.

---

[4] Treasury Regulations have long provided for the use of market value to determine value. There have been no relevant changes in the law during the period when these Regulations were effective. In such circumstances, the departmental interpretation should be given considerable weight. Stratton's Independence v. Howbert, 231 U.S. 399, 34 S.Ct. 136, 58 L.Ed. 285; Lucas v. Alexander, 279 U.S. 573, 579, 49 S.Ct. 426, 73 L.Ed. 851, 61 A.L.R. 906; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L. Ed. 893; Taft v. Commissioner of Internal Revenue, 304 U.S. 351, 58 S.Ct. 891, 82 L.Ed. 1393, 116 A.L.R. 346; Maass v. Higgins, 312 U.S. 443, 448, 61 S.Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035; Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155; Guggenheim v. Rasquin, supra; Magruder v. Realty Co., 316 U. S. 69, 62 S.Ct. 922, 86 L.Ed. 1278. In Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52, the Supreme Court held that Treasury Regulations and interpretations, long continued without substantial change applying to unamended or substantially reenacted statutes, are deemed to have received Congressional approval and have the effect of law. Citing United States v. Dakota-Montana Oil Co., supra; Old Mission Co. v. Helvering, 293 U.S. 289, 294, 55 S.Ct. 158, 79 L.Ed. 367. See also cited cases in footnote to Commissioner of Internal Revenue v. Elliott H. Wheeler et al., 65 S.Ct. 799. The holding in Helvering v. Reynolds, 313 U.S. 428, 432, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155 does not militate against this doctrine.

720

STEPHENS, Circuit Judge (concurring).

I concur but I wish to have a word. In oral argument eminent counsel pressed for reversal upon the premise that the Tax Court, although it received other evidence of *value*, determined *value* of the stock conveyed solely upon its average 'change price for the day it was conveyed. If the premise were sound, I should seriously ponder the argument. That is, if the Tax Court had taken the regulation referring to 'change price of stock as the exclusive competent evidence of *value*, I should think it error. The fact that the regulation has survived the vicissitudes of numerous congressional acts would not convince me that it had attained the "force and effect of law" for the simple reason that Congress itself is without sanction to enact such a law. I do not think Congress or any administrative body can legally provide for the taking of property as taxes upon the ad valorem basis upon its *value* ascertained solely from what traders on a stock exchange saw fit to pay for it on a certain day. However, the record shows the premise to be wholly wrong.