**In re NATHAN'S ESTATE.**

**HAMBURGER v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 11625.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 24, 1948.

Claude I. Parker, Ralph W. Smith and J. Everett Blum, all of Los Angeles, Cal., and L. A. Luce, of Washington, D. C., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Helen R. Carloss, Robert N. Anderson, Maryhelen Wigle and I. Henry Kutz, Spc. Assts. to the Atty. Gen., for respondent.

Before DENMAN, HEALY and BONE,

BONE, Circuit Judge.

This is a petition for review of a decision of the Tax Court involving the valuation of shares of stock for purposes of Federal estate tax.

Petitioner is executrix of the estate of Belle Alice Hamburger Nathan, who, at the time of her death on October 13, 1940,

owned 425.817 shares of common stock in A. Hamburger & Sons, Inc., and 104.167 shares of common stock in Hamburger Realty Company. The executors elected to have the assets of the estate valued on the optional date of October 13, 1941, as authorized by Sec. 811(j) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(j), and returned the stock in A. Hamburger & Sons, Inc. at a value of $983.35 per share, and the stock in Hamburger Realty Company at $2,113.55 per share. Respondent commissioner in a deficiency notice valued the stocks at $1,200 per share and $4,850 per share, respectively. A petition for redetermination of deficiency and recovery of alleged overpayment was filed with the Tax Court, petitioner therein contending for values of $300 and $1,300 per share, respectively, and respondent thereupon redetermined the values at $1,000 and $3,900 per share, respectively. The Tax Court sustained this latter determination of the commissioner.

From the stipulation of the parties, the corporate records and other exhibits in evidence, and the undisputed findings of the Tax Court, the following may be taken as established facts.

As of the basic date there were 3,744 outstanding shares of common stock in A. Hamburger & Sons, Inc. and 1,000 outstanding shares of common stock in Hamburger Realty Company, the stock of both corporations having a par value of $1,000 per share. Neither corporation had issued any stock other than the common stock referred to nor had they issued any bonds. All the stock in both corporations was owned or controlled by brothers and sisters of the Hamburger family, whose ages ranged from 72 to 84 years. None of the stock had ever been sold or listed on any exchange and both enterprises were closed family corporations. Because of inharmonious family relations some of the stockholders were not on speaking terms and each participated in the corporate affairs through his attorney; no younger persons had been trained to assume the operation of the corporations.

In the year 1923 Hamburger Realty Company leased certain real property in the City of Los Angeles to A. Hamburger & Sons, Inc. for a term of 20 years at an annual rental of $250,000. A. Hamburger & Sons, Inc. then sub-leased this property for a concurrent term to the May Department Stores Co. at an annual rental of over $500,000. Hamburger Realty Company then directly leased the property to the May Company at an annual rental of $300,000 for a term of 30 years, this term to commence January 1, 1943, this being the expiration date of the lease to A. Hamburger & Sons, Inc. and the sublease to May Company.

A. Hamburger & Sons, Inc. had a net worth of $3,881,767.33. Its assets were comprised primarily of United States Government bonds, parcels of real estate and amounts due from its stockholders and affiliated corporations. Its principal source of income was the May Company lease, which was not reflected as an asset in its balance sheet. During the years 1936 to 1943 it paid out in dividends slightly more than its available net income—the stockholders anticipated and borrowed the earnings each year, leaving no earnings for corporate operations. For the 1936-1943 period, the average annual dividends paid were $75.93 per share, average annual earnings per share being $68.26. Some $1,920,000 of the corporation's assets were loaned to its stockholders, or to corporations in which they were interested, at two per cent interest or at no interest at all; the loans to stockholders were represented by thirty year notes bearing two per cent interest on unpaid balances. An additional $384,000 was due from stockholders on open accounts upon which apparently no interest was charged.

Hamburger Realty Company had a net worth of $3,927,153.64. Of its approximately $4,500,000 in assets, $4,000,000 was represented by the property leased to A. Hamburger & Sons, Inc. and to May Company. The market value of this property was arrived at by giving effect to the lease and lease rentals discounted on a seven per cent basis, and adding the residual value of the property. The rentals from that property constituted the great majority of its income. During the years 1936

to 1943 it paid out dividends in excess of its available earnings, average annual earnings per share being $157.16 and average annual dividends paid per share, $165.64. This corporation had made no loans to its stockholders.

Petitioner produced two witnesses who appraised the stock in A. Hamburger & Sons, Inc. at values of $337.50 and $297.-66 per share, on the basis of expected earnings of $25 per share, after loss of the May Company lease in 1943, capitalized at ten and seven times earnings, respectively, plus the worth of dividends to be received before termination of the lease. These witnesses appraised the stock in Hamburger Realty Company at values of $2,000 and $1,750 per share, on the basis of expected earnings of $180 and $175 per share, including allowance for increase from the May Company rentals, capitalized eleven and ten times earnings, respectively.

The witness for respondent gave values of $3,900 per share for the stock in Hamburger Realty Company and $1,000 per share for the stock in A. Hamburger & Sons, Inc., apparently arrived at by giving dominant weight to the net worth of the two corporations, dividing this by the number of outstanding shares and modifying the resulting amounts into round figures.

Witnesses for both petitioner and respondent testified that they took into consideration all the various factors hereinafter mentioned in arriving at their estimated valuations.

The Tax Court in its opinion reasoned as follows: (1) that because of the abnormal dividend paying system of these corporations and the stockholders' use of corporate assets, the dividend records and normal evaluation criteria were not helpful in this case; (2) that the method used by the parties in valuing the property leased by Hamburger Realty Company and the falsely low income created by loans of A. Hamburger & Sons, Inc. to its stockholders gave sufficient consideration to the corporations' incomes as an evaluating factor; (3) that in view of these facts and the closely held nature of the corporations, the stock in which had never been sold to the public, the fair market value of the assets remained the only available factor which could be intelligently used in fixing the values of the shares in question.

Petitioner's basic contention is that the Tax Court erred, as a matter of law, in *failing to consider* factors of evaluation such as earnings and dividends-paying capacity, marketability, expert testimony, income taxes and expenses, and all other relevant factors.

The parties agree that the case comes within the purview of Treasury Regulations 105, Section 81.10, promulgated under Section 811 of the Internal Revenue Code, 26 U.S.C.A., § 811, the relevant portions of which are set forth in the margin.[1] The essentially pertinent part of this regulation provides that "if actual sales or bona fide bid and asked prices

---

1 Internal Revenue Code, Section 811:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * * *

"(j) If the executor so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date one year after the decedent's death, * * *" 26 U.S.C.A. Int.Rev. Code, § 811.

Treasury Regulations 105, Section 81.-10:

"Valuation of property.—(a) General.—The value of every item of property includible in the gross estate is the fair market value thereof at the time of the decedent's death; or, if the executor elects in accordance with the provisions of section 81.11, it is the fair market value thereof at the date therein prescribed or such value adjusted as therein set forth. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The fair market value of a particular kind of property includible in the gross estate is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value as of the applicable valuation date of each unit of the property.

are not available," the fair market value of corporate stock is to be arrived at by giving consideration to "the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. * * * However, the weight to be accorded such comparisons or other evidentiary factors considered in the determination of a value depends upon the facts of each case."

The question of fair market value for tax purposes is ever one of fact and not of formula, and we have repeatedly held that a decision of the Tax Court on this question will be sustained if supported by substantial evidence. Old Mission Portland Cement Co. v. Commissioner, 9 Cir., 69 F.2d 676; Roth v. Wardell, 9 Cir., 77 F.2d 124; Kinney's Estate v. Commissioner, 9 Cir., 80 F.2d 568; Zanuck v. Commissioner, 9 Cir., 149 F.2d 714, 160 A.L.R. 661.

Petitioner apparently acknowledges the foreging principle but insists that the Tax Court here did not consider the factors of value which the law and Treasury Regulations require it to consider, citing Laird v. Commissioner, 3 Cir., 85 F.2d 598; Weber v. Rasquin, 2 Cir., 101 F.2d 62; Worcester County Trust Co. v. Commissioner, 1 Cir., 134 F.2d 578; Commissioner v. McCann, 2 Cir., 146 F.2d 385. In each of these cases the Board of Tax Appeals or Tax Court, in appraising the value of stock, had either directly contravened the applicable Treasury Regulations or had employed a method of valuation, which, in the particular circumstances, was not in accordance with law. We have no quarrel with these decisions, but we do not find them determinative on the dissimilar facts with which we are confronted in this case. Cases can be found in which primary or exclusive emphasis has been properly placed upon one or the other of almost every factor which the regulations state are to be considered in the determination of fair market value.

It is evident that petitioner is exercised principally because of the Tax Court's alleged failure to consider the earnings and dividend-paying capacity of the two corporations.[2] The Tax Court in its opinion, after reviewing the nature of these corporations and their consistent diversion of earnings or assets into other than remunerative channels, states as follows:

"* * * Under these circumstances it is obvious that little help can be received from considering the dividends paid record of these corporations for the reason that their dividend paying system was entirely abnormal. Thus, we have two corpora-

For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the applicable valuation date should be considered in every case.

* * * * * * *

"(c) Stocks and bonds.—The value of stocks and bonds, within the meaning of the Internal Revenue Code, is the fair market value per share or bond on the applicable valuation date.

* * * * * * *

"If actual sales or bona fide bid and asked prices are not available, then, in the case of corporate or other bonds, the value is to be arrived at by giving consideration to the soundness of the security, the interest yield, the date of maturity, and other relevant factors, and, in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. Among such other relevant factors to be considered are the values of securities of corporations engaged in the same or a similar line of business which are listed on an exchange. However, the weight to be accorded such comparisons or any other evidentiary factors considered in the determination of a value depends upon the facts of each case. Complete financial and other data upon which the valuation is based should be submitted with the return. * * *"

2 The testimony of petitioner's own witnesses, who testified as valuation experts, reveals that they used the past and potential earnings factor of the two corporations, to the exclusion of practically all other valuation factors, in arriving at their opinions. The method employed by these witnesses has been referred to hereinbefore. As also previously noted, both the witnesses for petitioner and for respondent averred that they had "considered" all the relevant factors to which petitioner refers.

tions with no record of stock sales, a method of business operation unlike any normal corporation, and a system of paying dividends to stockholders whereby the stockholders profited more from receiving the use of the assets of the corporation to their own individual profit than they would have profited by receiving normal dividends. Under such conditions we do not feel that any system of evaluating this stock which would apply to a normal corporation would be useful here.

* * * * * *

"Since, in the case at bar, by agreement, the parties have placed the value of the building of the May Department Store, which constitutes 8/9ths of the assets of Hamburger Realty Co., at a fixed capitalization of the existing income and since the management of A. Hamburger & Sons, Inc. have intentionally created a falsely low income by enriching themselves and the other stockholders through interest-free loans, it is held that the incomes of these companies have already received all of the consideration possible in arriving at the valuation of the stock and that for existing purposes the fair market value of the assets is the only remaining available factor that can be intelligently used in arriving at this valuation."

■ The Tax Court did not ignore the evidence as to earnings and dividends but concluded that they did not afford a reliable criterion in this case.[3] We cannot say that this conclusion was unsupported by substantial evidence.

Petitioner asserts that the Tax Court postulated certain facts in eliminating earnings as an evaluation criterion, which are unsupported by or contrary to the evidence. It is true that the 30 year notes given by stockholders to A. Hamburger & Sons, Inc. for a total amount of over $800,000 each contained a provision that they bore two per cent interest on "all unpaid balances," whereas the Tax Court stated that no interest was required on such notes "except on overdue installments." However, there was a total of about $2,000,000 of A. Hamburger & Sons' assets loaned to stockholders or to corporations in which they were interested, and presuming that this entire amount bore the unusually low interest rate of two per cent (not to mention the additional $384,000 loaned to stockholders on open account, on which there is no evidence that interest was ever charged), it is not apparent that the Tax Court's unwarranted assumption as to interest only on "overdue installments" affects in any material way the validity of its conclusion that the A. Hamburger & Sons stockholders, through these loans, enriched themselves, created a falsely low corporate income, and constituted this an abnormal system of corporate operations. Petitioner's assertion that the Tax Court erroneously assumed that Hamburger Realty Company had also made such loans to its stockholders as the reason for eliminating that corporation's earnings as a usable valuation factor, is contradicted by the Tax Court's statement that the parties' valuation of the Hamburger Realty Companys' leased property and major asset accounted for not giving further consideration to that corporation's earnings. In any event, we regard these inaccuracies, in light of the entire record, of insufficient substance to compel the conclusion that the Tax Court's decision was without rational basis or ample evidentiary support.

As to the Tax Court's "consideration" of the various other factors which petitioner urges that it disregarded, a relatively recent decision of this court, where we were faced with an identical contention, appears particularly apposite. In Bank of California v. Commissioner, 9 Cir., 133 F.2d 428, 431, 432, Judge Mathews spoke for the court as follows:

3 The conclusion that under certain circumstances the value of stock in a closely held corporation which has never been sold to the public is to be ascertained solely on the basis of the corporation's net worth, is not without precedent. Bank of California v. Commissioner, 9 Cir., 133 F.2d 428; Kinney's Estate v. Commissioner, 9 Cir., 80 F.2d 568; Huntington v. Commissioner, 36 B.T.A. 698; Hanscom v. Commissioner, 24 B.T.A. 173; Pendleton v. Commissioner, 20 B.T.A. 618.

"Another factor which petitioners say the Board disregarded was Oakburn's income tax situation.

* * * * * *

"The fact that it might have such [subsequent taxable] income was known and was a factor to be considered in determining the fair market value of its stock. We assume that this factor was considered by the Board. There is no basis for assuming, as petitioners do, that it was disregarded. The fact that the Board found that Oakburn stock had a fair market value equal to Oakburn's net worth does not show that it disregarded the tax factor. But for this factor, the Board might well have found that the stock had a fair market value greater than Oakburn's net worth. It is common knowledge that the fair market value of a corporation's stock may be and often is greater than the corporation's net worth, despite the fact that its income is taxable.

"Another factor which petitioners say the Board disregarded was that Oakburn stock lacked marketability. The evidence showed that none of the stock was ever sold, but it did not show that it could not be sold, or that it was not marketable.

* * * * * *

"That Oakburn stock did not have as high a degree of marketability as some stocks have is conceded. This was a factor to be considered in determining the fair market value of the stock. We cannot say that it was disregarded. The weight to be given this and other valuation factors was for the Board, not this court, to decide. Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491; Palmer v. Commissioner, 302 U.S. 63, 70, 58 S.Ct. 67, 82 L.Ed. 50. Nor was the Board obliged to accept as sound the opinion of any expert witness on the subject. Helvering v. National Grocery Co., 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346."

We feel that the reasoning in the Bank of California case is equally forceful here in answer to petitioner's assertion that the Tax Court disregarded relevant evaluation factors. See also Cotton v. Commissioner, 9 Cir., 1948, 165 F.2d 987.

We do not here discuss or decide such questions as whether a lack of liquidity of the shares under consideration was more than offset by the unusual security of the investment, or whether the condition of the corporations' management was immaterial in view of its nominal functions and the nature of the corporations' assets and income: determination of these matters is not encompassed in the scope of our review. Upon examination of the entire record, however, we cannot conclude that, as a matter of law, the Tax Court failed to consider relevant factors or to weigh the evidence before it or that it adopted an improper criterion of value.

We are inclined to agree with respondent that petitioner, although alleging that the Tax Court "failed to consider" pertinent evaluation factors, is in fact charging that the Tax Court "failed to accept" certain criteria as being here determinative. The weight to be accorded the various evidentiary factors "depends upon the facts of each case." Treasury Regulations 105, supra.

Upon the facts of this case, we hold that the Tax Court's decision is founded upon a rational basis and is supported by substantial evidence. That is sufficient—we have no power to go further and reweigh the evidence. Webre Steib Co. v. Commissioner, 324 U.S. 164, 65 S.Ct. 578, 89 L.Ed. 819; Commissioner v. Scottish American Inv. Co., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113; Zanuck v. Commissioner, supra; Cotton v. Commissioner, supra.

Petitioner maintains that review of Tax Court decisions is no longer governed by the principle enunciated in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, because of the recently enacted Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. In consequence of our determination that the Tax Court's decision in this case was supported by substantial evidence, it is not necessary to consider this contention.

Affirmed.