Bernice Espy HICKS, as Special Fiduciary of the Estate of Pearle M. Espy, Deceased, Plaintiff-Appellant,

and

Financial Industrial Fund, Inc., et al., Intervenors,

v.

UNITED STATES of America, Defendant-Appellee.

No. 72–1360.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 14, 1972.

Decided Oct. 30, 1973.

------◆------

Theodore T. Peck, Denver, Colo. (Wagner & Wyers, Denver, Colo., on the brief), for plaintiff-appellant.

Leland E. Modesitt and Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., submitted a brief on behalf of the intervenors.

Wesley J. Filer, Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., Meyer Rothwacks and David English Carmack, Attys., Dept. of Justice, Washington, D. C., and James L. Treece, U. S. Atty., Denver, Colo., on the brief), for defendant-appellee.

Before HILL, HOLLOWAY and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Bernice Espy Hicks as special fiduciary brought this suit for refund of estate taxes paid on the estate of Pearle M. Espy. The District Court found that the fiduciary had not established that she was entitled to a refund and dismissed. 335 F.Supp. 474. The fiduciary appeals, arguing that the Court erred: (1) by substituting current liquidation value for book value in considering the real estate holdings of two corporations whose stock values were in issue; and (2) by allowing a decreased taxable value on one stock asset to be offset by an increased taxable value on another, without any such recoupment by setoff being raised in the Government's answer.[1]

The stock whose value is in issue is that of two closely held Colorado corporations, Espy Ice Company (Espy) and City Ice Company (City). At her death in 1966 decedent owned outright 7,600 shares in Espy and held a power of appointment over an additional 3,500 shares of Espy stock. She also had a power of appointment of 138 shares of City stock and Espy owned another 1,140 shares of City stock. Considering all the shares thus controlled, the decedent held approximately 52% of the outstanding stock of Espy and approximately 49% of that of City.

In his deficiency assessment the Commissioner valued the Espy stock at $37.44 per share and the City stock at $450.00 per share. The fiduciary's complaint in the District Court alleged by totals that these valuations had been placed on the stocks by the Commissioner. In its answer the Government alleged that the stock had been "properly valued," at the assessed values referred to in the complaint. The pretrial order reflects that no amendments to the pleadings were made and that the fair market value of the Espy and City stocks were contested issues of fact remaining for decision.

The fiduciary's valuation witness testified that the value of Espy stock at decedent's death was $13.70 per share and that the City stock was then worth $126 per share. He focused largely on recent

1. A further issue was argued below by the principal parties and intervenors as to the validity of the Commissioner's regulation for valuing mutual fund stocks, 26 C.F.R. § 20.-2031–8(b), and this issue has been briefed by the Government and intervenors on appeal. The issue was decided in favor of the fiduciary by the District Court and the same conclusion has now been authoritatively pronounced. United States v. Cartwright, 411 U.S. 546, 93 S.Ct. 1713, 36 L.Ed.2d 528. In view of the disposition we make on the other issues the argument by the Government on this issue need not be considered.

average earnings and dividend payments, rate of return calculations, and stock book value based on book value of assets. He indicated that the market value of the assets of the closely held corporations would not affect the value of the stock since the companies were not in liquidation. The District Court found that this approach to value was "totally unrealistic" primarily because, in connection with real estate owned by the corporations, he had used the book value of the properties. The Court noted that the witness failed to take into account ". . . any appreciation in value of industrial Denver real property and the sky rocketing value of prime mountain property having potential for subdivision." While the witness was permitted to testify as to his conclusions based on the values he used, the Court did not accept his conclusions.

The Government offered testimony by an expert appraiser on the value of real estate owned by Espy and City. It then also offered proof by another expert on the value of the corporate stocks of these companies. This witness took into consideration the prior testimony on the value of the real property owned by the corporations, along with other factors not now in issue, such as earnings records and the like. His conclusions were that the Espy and City stocks were worth $41.75 and $306 per share, respectively, at the decedent's death. This proof placed the value of the City stock below its valuation in the Commissioner's assessment. However, it placed the Espy stock, of which the decedent held a far greater number of shares, at a valuation above that stated in the assessment.

The District Court accepted the Government testimony as to the values of Espy and City stocks and found that the tax would have been $197,737.30 based on them and the value of other assets of the estate. This exceeded the amount of tax actually paid—$190,082.97. Therefore the Court found that the fiduciary had not established her entitlement to a refund and dismissed the action.

We agree fully with the Court's views expressed in its detailed opinion. Our discussion will be confined to the two principal appellate arguments urged before us.

First the fiduciary argues that the District Court erred by substituting current liquidation value for book value when it considered the value of real estate holdings of Espy and City. The contention is directed at the testimony of the Government witness on the stock values, accepted by the Court, since the witness is said to have given improper consideration to the fair market value of the real property owned by the corporations. The fiduciary says that the market value of the real properties should not have been considered by the expert witnesses or the Court since the corporations were not contemplating sale of any of them. We cannot agree.

The Government's valuation witness explained that he had studied Espy and realized it was not a wholly operating company. He considered the corporation to have three valuable assets apart from the business of vending ice through machines in downtown Denver: the lake property near Toponas; the Espy real estate near Rollinsville, and the shares of City stock owned by Espy. The witness pointed out that the lake property was no longer used for its original purpose of harvesting ice for sale in Denver and that the property could have been sold without affecting the ice business. He gave each of the three Espy assets separate weight based on their fair market values, and also considered the ongoing business producing the corporate earnings. In valuing the City stock the Government witness again considered earnings and the fair market value of assets, as well as a discount factor for lack of marketability of the stock.

By contrast the fiduciary's witness focused largely on recent average earnings and dividends of City and Espy, rate of return calculations, and stock book value based on book value of assets. He viewed the market values of assets as

immaterial and apparently relied only on book values of them.

■ We feel the Court's findings, based on acceptance of the Government proof, are fully supported by reason and the record. The valuation of stock in the closely held corporations for tax purposes is a question of fact and the weight to be given the various evidentiary factors depends on the circumstances of each case. 26 C.F.R. § 20.-3031–2(f); Hamm v. C.I.R., 325 F.2d 934, 938 (8th Cir.), cert. denied, 377 U. S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046; F. A. Gillespie & Sons Co. v. C.I.R., 154 F.2d 913 (10th Cir.), cert. denied, 329 U.S. 781, 67 S.Ct. 204, 91 L.Ed. 670. The value of a closely held corporation's assets and its net worth have generally been recognized as proper factors to be considered. 26 C.F.R. §§ 20.3031–2(f); see, e. g., Hamm v. C.I.R., supra; In re Estate of Nathan (Hamburger v. C.I.R.) 166 F.2d 422 (9th Cir.); Brooks v. Willcuts, 78 F.2d 270 (8th Cir.). We are convinced that there was no error in taking into account the various factors that were considered in determining the value of the stocks in question.

Second, the fiduciary contends that the District Court erroneously allowed a decreased tax value to be set off by an increased tax value without any such recoupment by setoff being raised in the pleadings. She says the Government was foreclosed from obtaining the benefit of proof showing a higher valuation for the Espy stock than was used in the Commissioner's assessment. The point is also urged on the theory that the Government's answer made a judicial admission of the correctness of the assessed value of the Espy stock so that the Gov-

ernment is conclusively bound by that value. Again we disagree.

At trial the fiduciary presented her own proof attempting to show that the value of the Espy stock was $13.70 per share. This was below the value of $37.44 per share relied on in the assessment. As noted above, the Government's answer had "admitted" that the stocks had been properly valued in the assessment. Thus the $37.44 value for Espy stock used by the Government in the assessment was before the Court for consideration as an admission.[2]

Government evidence was also offered at trial to show that the value of the Espy stock was $41.75 per share. No objection was then made by the fiduciary based on the theory of a judicial admission, or of a variance from the issues defined in the pretrial order or the pleadings. After trial and the oral announcement of the Court's findings, the Court directed that the parties compute the proper tax under the ruling made. At that point the fiduciary's counsel argued that he thought the Government was limited by its answer in which it was stated specifically that the values fixed by the Internal Revenue Service were correct. Subsequently the Court entered its written findings and judgment based on the Espy stock value of $41.75 per share and other values found.

■ The issue for trial on the claim for refund was the redetermination of the entire estate tax liability, as the District Court observed. See Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293. There was no actual judicial admission removing the issue of the Espy stock value from trial,[3] although the Government's answer was be-

---

2. The District Court's opinion referred to the values per share given for the Espy stock in the estate tax return, $25.00; in the assessment, $37.44; by the fiduciary's witness, $13.70; and the Government witness, $41.75. 335 F.Supp. at 476.

3. Such an admission occurs where a proposition of fact is alleged by one party and conceded to be true by the adverse party. See

McNamara v. Miller, 106 U.S.App.D.C. 64, 269 F.2d 511, 515–516; Alamo v. Del Rosario, 69 App.D.C. 47, 98 F.2d 328, 330; IV Wigmore on Evidence, § 1059 at 27 (Chadbourn Rev.). Since there was no allegation by the fiduciary that the Espy stock was worth $37.44 per share as assessed, followed by an admission of that value by the Government, the theory is inapplicable.

fore the Court to be considered as an admission on the Espy stock value. The pretrial order reflects that this issue remained for decision. And in any event the pleadings of the parties would be deemed amended to conform to the proof offered by them. Rule 15(b) F. R.Civ.P.; Hopkins v. Metcalf, 435 F.2d 123 (10th Cir.).

We are satisfied the record shows no prejudice to the fiduciary. She offered her own proof on the issue and made no objection to that of the Government. Since there was no prejudice or unfairness in trial of the issue, the judgment should not be disturbed. Monod v. Futura, Inc., 415 F.2d 1170, 1174 (10th Cir.); Decker v. Korth, 219 F.2d 732, 739 (9th Cir.), cert. denied, 350 U.S. 830, 76 S.Ct. 61, 100 L.Ed. 740; see also Southwestern Investment Co. v. Cactus Motor Co., 355 F.2d 674, 678 (10th Cir.); Christie v. United States, 179 F.Supp. 709 (D.Or.) (allowing a larger refund than was sought by a taxpayer in his complaint).

The fiduciary makes a related argument against Government reliance on the increased Espy stock value above that in the assessment. She says that to allow this permits a barred claim to be used as a setoff or recoupment, relying on Brady v. United States, 24 F.2d 205 (D.Mass.), and other cases. However the issue here was the redetermination of the entire estate tax liability which the fiduciary's refund suit called for, see Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293, and no recoupment was involved. Even viewed as a recoupment, reliance on the Espy stock value relating to the same tax liability would not be barred. See Bull v. United States, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421.[4]

We are convinced that the claims of error are untenable and that the findings and judgment of the District Court are amply supported and proper.

Affirmed.

---

4. Although the District Court found that the proper tax was greater than that assessed and paid, the Government there conceded that it was not entitled to an affirmative judgment because the statute of limitations precluded further assessment.