## COTTON v. COMMISSIONER OF INTERNAL REVENUE.

### CALDWELL v. SAME.

Nos. 11506, 11507.

Circuit Court of Appeals, Ninth Circuit.
Feb. 12, 1948.

Rehearing Denied March 9, 1948.

A. Calder Mackay, Arthur McGregor, Howard W. Reynolds, and Adam Y. Bennion, all of Los Angeles, Cal., for petitioners.

Theron E. Caudle, Asst. Atty. Gen., Sewall Key, Lee A. Jackson, Morton K. Rothschild, and Newton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, MATHEWS, and ORR, Circuit Judges.

MATHEWS, Circuit Judge.

Here for review are decisions of the Tax Court that there were deficiencies in respect of taxes on gifts made by petitioners (Victoria L. Cotton and Virginia Caldwell) in 1941. Petitioner Cotton made a gift of 200 shares of stock of Carson Estate Company, hereafter called Carson, valued it at $250 a share and paid a gift tax computed on that basis. Petitioner Caldwell made a gift of 105 shares of stock of Francis Land Company, hereafter called Francis, and 100 shares of stock of Dominguez Estate Company, hereafter called Dominguez, valued the Francis stock at $374 a share and the Dominguez stock at $340 a share and paid a gift tax computed on that basis. The Tax Court found that, at the time of the Cotton gift, the Carson stock had a fair market value of $500 a share, and that, at the time of the Caldwell gift, the Francis stock had a fair market value of $990 a share and the Dominguez stock a fair market value of $900 a share. These findings are specified as error.

Respecting the valuation of property for gift tax purposes, the applicable regulation (§ 86.19 of Treasury Regulations 108) provides: "The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The value of a particular kind of property is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value at the time of the gift of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the time of the gift should be considered.

* * * The value at the date of the gift in the case of stocks and bonds * * * is the fair market value per share or bond on such date. * * * If actual sales or bona fide bid and asked prices are not available, then * * * the value is to be arrived at * * * in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock."

Petitioner Cotton's gift was made on June 5, 1941. Petitioner Caldwell's gift was made on August 11, 1941. It was stipulated that, "for the purposes of this proceeding, any reference to the date of June 5, 1941, and any valuations as of that date shall be applicable, without change, to the date of August 11, 1941," and that "the fair market value of any assets stipulated or determined by the court as of June 5, 1941, shall be deemed to be the fair market value thereof as of August 11, 1941."

On June 5, 1941, Carson had outstanding 7,412 shares of stock, Francis 5,000 shares and Dominguez 10,499 shares. All shares of each company were of one class. None of the shares was listed or dealt in on any stock exchange. It was stipulated, however, that sales of Carson stock were made as follows: On August 8, 1935, six shares at $300 a share; on June 26, 1936, 82 shares at $300 a share. It was stipulated that sales of Francis stock were made as follows: On June 10, 1936, 365 shares at $1,000 a share; on October 1, 1936, three shares at $1,100 a share; on January 18, 1939, 33 shares at $1,000 a share; on April 24, 1941, 105 shares at $1,093.75 a share. It was stipulated that sales of Dominguez stock were made as follows: On June 10, 1936, 1,100 shares at $1,000 a share; on October 2, 1936, 11 shares at $1,000 a share; on January 18, 1939, 99 shares at $1,000 a share; on April 18, 1940, two shares at $700 a share; on April 24, 1941, 99 shares at $1,000 a share. The record shows no other sale of Carson, Francis or Dominguez stock.

It was stipulated that on June 5, 1941, Carson owned 1,785 shares of Francis stock and 1,353 shares of Dominguez stock and owned other property the fair market value of which was $1,080,554.09, and that its lia-

bilities aggregated $34,157.48. It was stipulated that on June 5, 1941, Francis owned 5,499 shares of Dominguez stock and owned other property the fair market value of which was $83,221.90, and that its liabilities aggregated $85,331.34. It was stipulated that on June 5, 1941, Dominguez owned certain oil properties and owned other property the fair market value of which was $5,272,376.27, and that its liabilities aggregated $292,677.09. The Tax Court found that on June 5, 1941, Dominguez' oil properties had a fair market value of $4,500,000. If this finding was correct, Dominguez' net worth was $9,479,699.18 [1] ($902.91 a share), Francis' net worth was $4,962,992.65 [2] ($992.59 a share), and Carson's net worth was $4,039,806.99 [3] ($545.03 a share).

Ten expert witnesses—Wents, Paine, Evans, Pemberton, Corey, Clute, Grimes, Phillips, Eitner and Webb—testified concerning the fair market value of Dominguez' oil properties on June 5, 1941. Valuations testified to by these witnesses were as follows: Wents, $2,701,361; Paine, $3,000,000; Evans, $4,000,000; Pemberton, $4,000,000; Corey, $4,330,255; Clute, $4,450,000; Grimes, $4,819,070; Phillips, $4,934,391; Eitner, $4,988,600; Webb, $5,335,000. Thus the finding that Dominguez' oil properties had a fair market value of $4,500,000 was supported by substantial evidence. We therefore accept this finding as correct.

It was stipulated that, in the five years next preceding the year in which the gifts were made, Carson's earned surplus was as follows: 1936, $133,927.02 ($18.06 a share); 1937, $151,744.45 ($20.47 a share); 1938, $179,554.78 ($24.22 a share); 1939, $206,025.81 ($27.79 a share); 1940, $231,369.88 ($31.21 a share). It was stipulated that, in the period mentioned, Francis' earned surplus was as follows: 1936, $8,538.04 ($1.70 a share); 1937, $6,491.88 ($1.29 a share); 1938, $4,658.83 (93 cents a share); 1939, $4,212.39 (84 cents a share); 1940, $2,803.53 (56 cents a share). It was stipulated that, in the period mentioned, Dominguez' earned surplus was as follows: 1936, $587,204.59 ($55.92 a share); 1937, $832,257.15 ($79.27 a share); 1938, $1,116,176.87 ($106.31 a share); 1939, $1,049,771.14 ($99.98 a share); 1940, $790,124.61 ($75.25 a share).

It was stipulated that, in the period mentioned, Carson paid dividends as follows: 1936, $230,428 ($31.08 a share); 1937, $248,302 ($33.50 a share); 1938, $216,869.21 ($29.25 a share); 1939, $237,184 ($32 a share); 1940, $237,184 ($32 a share). It was stipulated that, in the period mentioned, Francis paid dividends as follows: 1936, $66.50 a share; 1937, $71.50 a share; 1938, $78.50 a share; 1939, $77.75 a share; 1940, $76.25 a share. It was stipulated that, in the period mentioned, Dominguez paid dividends as follows: 1936, $61.50 a share; 1937, $66 a share; 1938, $74 a share; 1939, $72 a share; 1940, $72 a share.

Seven expert witnesses—McFie, Lovelace, Eitner, McCuen, Phillips, Gally and Grimes—testified concerning the fair market value of Carson stock on June 5, 1941. Valuations per share of Carson stock testi-

---

[1] Computed as follows:

| | |
|---|---|
| Oil properties, | $4,500,000.00 |
| Other property, | 5,272,376.27 |
| | |
| Total assets, | $9,772,376.27 |
| Liabilities, | 292,677.09 |
| | |
| Net worth, | $9,479,699.18 |

[2] Computed as follows:

| | |
|---|---|
| 5,499 shares of Dominguez stock at $902.91 a share, | $4,965,102.09 |
| Other property, | 83,221.90 |
| | |
| Total assets, | $5,048,323.99 |
| Liabilities, | 85,331.34 |
| | |
| Net worth, | $4,962,992.65 |

[3] Computed as follows:

| | |
|---|---|
| 1,785 shares of Francis stock at $992.59 a share | $1,771,773.15 |
| 1,353 shares of Dominguez stock at $902.91 a share, | 1,221,637.23 |
| Other property, | 1,080,554.09 |
| | |
| Total assets, | $4,073,964.47 |
| Liabilities, | 34,157.48 |
| | |
| Net worth, | $4,039,806.99 |

fied to by these witnesses were as follows: McFie, $192; Lovelace, $214; Eitner, $230; McCuen, $240.80; Phillips, $444.82; Gally, $518.13; Grimes, $558.78. Eight expert witnesses—Paine and the seven last above mentioned—testified concerning the fair market value of Francis and Dominguez stock on June 5, 1941. Valuations per share of Francis and Dominguez stock testified to by these witnesses were as follows:

| Witness | Francis | Dominguez |
|---|---|---|
| Paine | $420.00 | $420.00 |
| McFie | $334.40 | $304.00 |
| Lovelace | $367.00 | $418.00 |
| Eitner | $425.50 | $407.00 |
| McCuen | $375.80 | $380.00 |
| Phillips | $834.74 | $759.00 |
| Gally | $947.60 | $861.46 |
| Grimes | $1,026.64 | $933.31 |

We conclude that the findings first above mentioned—that the fair market value of Carson stock was $500 a share, that the fair market value of Francis stock was $990 a share, and that the fair market value of Dominguez stock was $900 a share— were supported by substantial evidence. We therefore accept these findings as correct.

As indicated above, sales of Francis stock were made at $1,100 a share on October 1, 1936, at $1,000 a share on January 18, 1939, and at $1,093.75 a share on April 24, 1941, and sales of Dominguez stock were made at $1,000 a share on October 2, 1936, January 18, 1939, and April 24, 1941. The parties to these sales were related to each other. Petitioners therefore contend that these sales should not have been considered by the Tax Court in determining the fair market value of Francis and Dominguez stock on June 5, 1941. There is no merit in this contention. That the parties were related to each other was a circumstance which the Tax Court could, and presumably did, consider in determining the weight to be given the fact that sales were made at the prices mentioned. The Tax Court was not thereby required to disregard the fact that sales were so made. The weight to be given that fact was a matter for the Tax Court, not this court, to determine.

Petitioners say that, in determining the fair market value of Carson, Francis and Dominguez stock, the Tax Court arbitrarily refused to attach weight to expert testimony. It is true that the Tax Court's valuation of Carson stock was higher than the valuations testified to by McFie, Lovelace, Eitner, McCuen and Phillips and lower than the valuations testified to by Gally and Grimes, and that the Tax Court's valuation of Francis stock and the Tax Court's valuation of Dominguez stock were higher than the valuations testified to by Paine, McFie, Lovelace, Eitner, McCuen, Phillips and Gally and lower than the valuations testified to by Grimes; but it does not follow that the Tax Court arbitrarily refused to attach weight to expert testimony. What the Tax Court did was to resolve conflicts in such testimony. In resolving such conflicts, it had to determine the weight to be given to the testimony of each expert. We cannot say that, in so doing, it acted arbitrarily.

Petitioners say that the Tax Court disregarded factors of valuation required by § 86.19 of Treasury Regulations 108 to be considered. The record does not so show. The Tax Court's opinion states that its conclusion as to the fair market value of Carson, Francis and Dominguez stock was reached "After reviewing this record, examining exhibits, studying the briefs, the asset value of the stock of [Carson, Francis and Dominguez], their past earnings, the prospects of future earnings, and all speculative and other factors affecting the price of these stocks on the dates of the gifts." We cannot say that the statement is untrue.

Petitioners contend that the testimony of Grimes, Phillips and Webb concerning the fair market value of Dominguez' oil properties should not have been received or considered by the Tax Court. There is no merit in this contention. The qualifications of Grimes, Phillips and Webb as expert witnesses were sufficiently shown. Objections to their testimony urged by petitioners go to its weight rather than to its admissibility. The weight to be given such testimony was a matter for the Tax Court, not this court, to determine.

Decisions affirmed.